

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-16-00455-CV

IN RE RICO DANIEL REARDON                                    RELATOR

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 325-425702-07

----------

## OPINION

----------

### I. Introduction

In a single issue, Relator Rico Daniel Reardon (Father) argues that a writ of prohibition should issue because Respondent, the Honorable Judith Wells of the 325th District Court of Tarrant County, does not have jurisdiction to hear pending motions to modify in a suit affecting the parent-child relationship (SAPCR) when an appeal is pending in this court from the last final order. For the reasons explained below, we deny Father's petition for writ of prohibition.

## II. Factual and Procedural Background

Father and real party in interest Mother filed competing motions to modify the parent-child relationship, and trial was held in May 2015. The trial judge issued a final order in that case on August 31, 2015, and then she set aside that order on November 11, 2015, and signed a reformed order on May 19, 2016.

Father filed a new petition to modify the parent-child relationship on June 6, 2016, requesting modification of the May 19, 2016 order, alleging that the circumstances of the child, a conservator, or other party affected by the order had materially and substantially changed. Among other relief, Father's petition sought restrictions on Mother's access to the child and additional periods of possession of the child for himself.

Mother filed a counter-petition wherein she, too, sought modification of the May 19 order. In the meantime, Mother also filed a motion for new trial or to correct, modify, or reform the May 19 order.

The trial judge granted Mother's motion to reform the May 19 order and signed a second reformed order on July 26, 2016. Mother then filed another motion for new trial, as well as a notice of appeal, related to the July 26 order. That appeal, bearing cause number 02-16-00401-CV, is currently pending in this court.

The trial court conducted hearings in the modification suit in piecemeal fashion, beginning on September 12, 2016 and continuing through November. On November 14, Father filed a "Motion to Deny Relief," asking the trial court to

deny Mother's request for relief and to award him attorney's fees and costs. Rather than grant his motion, the following day the trial court signed a temporary injunction prohibiting Father from engaging in certain activities related the child's mental and physical health. Several days later, his Motion to Deny Relief was denied, and on December 5, Father filed a petition for writ of prohibition and a motion for emergency relief in this court. We granted the stay, requested a response, and granted Father's request for oral argument.

### III. Jurisdiction

Father argues that a writ of prohibition should issue because the trial court does not have jurisdiction to hear pending motions to modify in a SAPCR when an appeal is pending from the last final order. He bases his argument primarily on the Eighth court's holding in *In re E.W.N.*, 482 S.W.3d 150 (Tex. App.—El Paso 2015, no pet.).

Mother responds that a trial court having continuing, exclusive jurisdiction in a SAPCR continues to enjoy jurisdiction to modify a final order even while an appeal of that order is pending. To support her position, Mother relies on authority from the First and Fifth courts. *See Blank v. Nuszen*, No. 01-13-01061-CV, 2015 WL 4747022 (Tex. App.—Houston [1st Dist.] Aug. 11, 2015, no pet.) (mem. op.); *Hudson v. Markum*, 931 S.W.2d 336 (Tex. App.—Dallas 1996, no writ).

Both sides acknowledge the split in authority between the First and Fifth courts and the Eighth court. Father contends that we must follow the decision in

3

*E.W.N.* as precedent of this court because the Eighth court was a transferee from this court. *See* Tex. R. App. P. 41.3. Father argues that until *E.W.N.* is overruled by an en banc decision of this court, we are bound by it. While we certainly respect the analysis employed by our sister court, the initial question before us is whether we are bound, as the transferor court, to its holding.

## A. Transferee precedent does not bind a Transferor court

### 1. Background

We note, ab initio, that *E.W.N.* was complicated by not just one but two docket equalization orders, diverting the first appeal and the second appeal to different regions of the state. In September 2011, in response to the father's motion to modify the parent-child relationship between him and his son, the Denton County trial court ordered the father to pay $1,500 in monthly child support and gave the mother the exclusive right to designate the child's residence, among other things. *E.W.N.*, 482 S.W.3d at 151; *Nichol v. Nichol*, No. 07-12-00035-CV, 2014 WL 199652, at *1 (Tex. App.—Amarillo Jan. 15, 2014, no pet.) (mem. op.). The father appealed to this court, and in January 2012, the first docket equalization order forced the transfer of the appeal of the trial court's original order establishing conservatorship and child support for E.W.N. to the Seventh court, in Amarillo. *See E.W.N.*, 482 S.W.3d at 151–52; *Nichol*, 2014 WL 199652, at *1 (affirming the trial court's order).

While the appeal was pending, the father filed another petition to modify, seeking to reduce the $1,500 monthly amount of child support and seeking the

4

exclusive right to determine the child's primary residence.  *E.W.N.*, 482 S.W.3d at 151–52.  The trial court dismissed the petition to modify on the basis that we had exclusive jurisdiction over the entire cause.  *Id.* at 152.  The father appealed to this court, and a second docket equalization order forced the transfer of that appeal to the Eighth court, in El Paso.  *Id.*  While the second appeal remained pending in the Eighth court, the Seventh court issued its opinion and judgment affirming the trial court's original order.  *Id.*

The Eighth court affirmed the trial court's dismissal of the father's second petition to modify, reasoning that once the trial court's plenary power had expired under the order sought to be modified, the appellate court acquired exclusive jurisdiction of the appeal and the entire cause, and it concluded that the remedy while an appeal is pending lies within the appellate court's power to suspend problematic orders and to abate an appeal to the trial court for an emergency hearing for the child's protection.  *Id.* at 154–57.  We consider the analysis used by our sister court to reach this result in our analysis below of this issue of first impression in this court.

## 2.  Texas Rule of Appellate Procedure 41.3 and Stare Decisis

Texas rule of appellate procedure 41.3, which addresses precedent in cases transferred from one court of appeals to another, mandates that "the court of appeals to which [a] case is transferred must decide the case in accordance with the precedent of the transferor court."  Tex. R. App. P. 41.3.  The purpose of this rule is to require the transferee court to "'stand in the shoes' of the transferor

5

court so that an appellate transfer will not produce a different outcome, based on application of substantive law, than would have resulted had the case not been transferred." Tex. R. App. P. 41.3 cmt. In the case of *E.W.N.*, however, the Eighth court could not enjoy the benefit of our precedent because it would have been—like the instant case—a case of first impression for us. More to the point, however, with regard to rule 41.3, neither the rule itself nor the comment that follows addresses whether a *transferee* court may establish precedent to bind the *transferor* court. Nor have we have found any case that requires such binding.

During oral argument in this appeal, Father's attorney clarified his position that stare decisis generally, not rule 41.3, mandates that we follow the Eighth court's holding in *E.W.N.* We disagree. Notwithstanding the law that the Eighth court was bound to follow in *E.W.N.*, the opinion is the product of the Eighth court, not the Second court.[1] While we certainly may be guided by the reasoning and analysis exercised by our sister court in reaching its decision, we hold that we are not bound by the precedent it sets in determining cases of first impression for us. *See Barnes v. W. All. Ins. Co.*, 844 S.W.2d 264, 272 (Tex. App.—Fort Worth 1992, writ dism'd by agr.) ("Moreover, we are not bound by the decisions of our sister appellate courts."); *see also* Tex. Gov't Code Ann. § 22.001(a)(2)

---

[1]To avoid confusion when the jurisprudence of a transferor court and a transferee court conflict, rule 41.3 allows a transferee court's opinion to clarify that its opinion "would have been different had the transferee court not been required to decide the case in accordance with the transferor court's precedent." Tex. R. App. P. 41.3.

6

(West 2004) (describing the supreme court's "conflict" jurisdiction to include "a case in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case"). *But see Duncan Land & Expl., Inc. v. Littlepage*, 984 S.W.2d 318, 336 (Tex. App.—Fort Worth 1998, pet. denied) (Cayce, C.J., dissenting) (observing that while decisions of sister courts do not bind us, they "should be accorded such a measure of weight and influence as they may be intrinsically entitled to receive," given the court's duty to consider the "general current" or "preponderance" of authority).

## B.  The trial court's continuing, exclusive jurisdiction in SAPCRs

Having determined that we are not bound by the holding in *E.W.N.*, we now must decide whether we agree with its analysis or whether we will instead follow the reasoning in the only other two cases in Texas jurisprudence that have addressed this issue—*Hudson* and *Blank*, from the Fifth and First courts, respectively.

Father argues that allowing a modification order to proceed during the pendency of a prior SAPCR order would render family code section 109.001—which provides a limited opportunity for a trial court to enter temporary orders during the pendency of a SAPCR appeal—meaningless. He also argues that because the family code provides that appeals of final SAPCR orders "shall be as in civil cases generally," and that an appeal from a final order does not suspend the order unless suspension is ordered by the trial court, a trial court

7

should not have authority to modify a final order pending appeal. *See* Tex. Fam. Code Ann. § 109.002(a)–(c) (West 2014). During oral argument, Father further argued that allowing modification orders to moot prior final orders would create an opportunity for a litigant or a trial judge to use continuous and sequential modifications to effectively elude appellate review of the orders that govern the parties. Father also pointed to the increased litigation costs that would occur if dual proceedings—at both the trial and appellate levels simultaneously—were permitted. We will address each of these arguments in turn after we first examine the interplay of the subtitles at issue.

### 1. Interplay of Title 5, Subtitles A and B

Title 5 of the family code governs SAPCRs and is divided into five subtitles, but only two subtitles are at issue here: Subtitle A, which contains general provisions, such as venue, costs, fees, appeals, and temporary orders during the pendency of appeal, and Subtitle B, which contains the specific items that can be at issue in a SAPCR, including conservatorship, child support, modification, enforcement, and the trial court's continuing, exclusive jurisdiction. *See generally id.* §§ 101.001–111.003, 151.001–162.602 (West 2014 & Supp. 2016).

Title 5 contains only three provisions that address procedures during appeal. *Id.* §§ 109.001–.003. Section 109.001, entitled, "Temporary Orders During Pendency of Appeal," provides a 30-day window for the trial court to enter temporary orders pending the appeal of a SAPCR order. *Id.* § 109.001(a).

8

During that time period, the trial court's authority is limited to temporary modifications that are "necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal as the court may deem necessary and equitable." *Id.* During this window of opportunity, the trial court may, "[i]n addition to other matters," appoint temporary conservators, provide for possession and temporary child support, restrain a party from bothering the child or another party, prohibit removal of the child beyond a geographical limit, require payment of reasonable attorney's fees and expenses, and even suspend the operation of the order or judgment being appealed. *Id.* Further, the trial court retains jurisdiction to enforce its temporary orders under section 109.001 "unless the appellate court, on a proper showing, supersedes the court's order." *Id.* § 109.001(b), (c).

Thus, during this 30-day period, trial courts are given broad authority to enter temporary orders pending appeal. Section 109.001 orders are restricted only by time, because they are temporary orders for the duration of the appeal; by purpose, because they must be necessary to ensure the safety and welfare of a child during that period of time; and by equity. *See id.* § 109.001(a)–(c). A temporary order under section 109.001 is not subject to interlocutory appeal. *Id.* § 109.001(c).

Section 109.002, "Appeal," states in pertinent part that an appeal from a final order, "when allowed under this section or under other provisions of law," shall be as in civil cases generally under the rules of appellate procedure, and an

9

appeal "may be taken by any party to a suit from a final order rendered under" Title 5. *Id.* § 109.002(a), (b). An appeal from a final order under section 109.002 does not suspend that order unless the trial court orders suspension or the appellate court, on a proper showing, permits the order to be suspended. *Id.* § 109.002(c). Section 109.003, which is not at issue here, involves a party's indigency and payment for the reporter's record on appeal. *Id.* § 109.003.

In contrast to the more procedural statutes in Subtitle A related to appeals, the statutes appearing in Subtitle B provide various substantive parameters under which a trial court may modify a SAPCR order even after it has become final. *See id.* § 155.002 (stating that except as otherwise provided, "a court with continuing, exclusive jurisdiction retains jurisdiction of the parties and matters provided by this title"). A petition seeking a Subtitle B modification is considered a separate lawsuit and, as such, it seeks a substitute judgment that would replace an existing SAPCR order. *See id.* § 156.004 ("The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification under this chapter."); *Blank*, 2015 WL 4747022, at *2 (noting that a suit for modification of a SAPCR constitutes an "original" lawsuit and that a trial court's modification order would thus constitute a final, appealable order).

The various statutes that comprise Subtitle B delineate particular circumstances under which modification is permitted, provide limitations on what modifications can be made, and set forth standards that must be met to support such modification. *See* Tex. Fam. Code Ann. § 156.101(a)(1)–(3) (providing for

10

modification of conservatorship or possession and access when "modification would be in the best interest of the child," when a child of 12 years of age or older has expressed a preference, or in circumstances involving voluntary relinquishment), § 156.102(b)(1)–(3) (providing for modification of the exclusive right to determine child's primary residence within a year of the previous order when the child's present environment may endanger or significantly impair the child's health or development, the person with the exclusive right is the party seeking modification, or in cases of voluntary relinquishment), § 156.103 (permitting modification when a change in residence results in increased expenses for a party with possession of or access to the child), § 156.104 (permitting modification of conservatorship, possession of, or access to a child in circumstances involving a child abuse conviction), § 156.1045 (permitting modification of conservatorship, possession of, or access to a child in circumstances involving a family violence conviction), § 156.105 (permitting temporary modification of conservatorship, possession of, or access to a child in circumstances involving military deployment, mobilization, or temporary duty), § 156.401 (permitting modification of child support or health care coverage upon showing of material and substantial change in circumstances, including when obligor has been released from incarceration or when the support ordered differs three years later from current guidelines by 20% or $100), § 156.403 (providing that a history of voluntary additional support does not constitute cause for modification), § 156.404 (providing that neither additional resources received

11

from new spouses nor additional needs of new spouses or their dependents provide grounds to modify child support amount), § 156.405 (providing that an obligee's change in lifestyle is not sufficient ground to increase child support obligations). Notably, however, none of the various provisions of Subtitle B include the pendency of an appeal as a limitation or barrier to modification.

## 2. Subsequent modification and section 109.001 are not inconsistent

Relying on *E.W.N.*, Father argues that permitting a modification of the SAPCR order under Title 5, Subtitle B of the family code while the same SAPCR order is being challenged on appeal would render section 109.001 meaningless.

In *E.W.N.*, the Eighth court first looked to the language of section 109.002 regarding the ability to appeal from Title 5 final orders in the same manner as regular civil appeals. 482 S.W.3d at 153. It then considered section 109.001 regarding temporary orders and observed that the 30-day time limit for requesting temporary orders had expired. *Id.* at 153–54, 157. Applying the two statutes together, the court reasoned that to allow modification of an order pending its appeal would render section 109.001's grant of limited authority to the trial court to enter temporary orders pending appeal "completely unnecessary." *Id.* at 153–54. Because the court's duty when construing statutes is to "give effect to every provision and ensure that no provision is rendered meaningless or superfluous," *id.* at 154 (quoting *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008)), the court held that section 109.001

"implicitly, if not explicitly, recognizes an appellate court's exclusive plenary authority over the cause on appeal." *Id.*

Other than acknowledging that the father in that case had raised arguments under sections 155.001, 155.002, 155.003, and 156.002, the Eighth court did not go beyond stating that "[n]one of these sections addresses the impact of an appeal on the trial court's authority to modify an existing order." *Id.* at 152–53. We disagree with this approach and instead consider the statutory scheme as a whole. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) ("We determine legislative intent from the entire act and not just isolated portions."); *see also D.A. v. Tex. Health Presbyterian Hosp.*, No. 02-16-00148-CV, 2017 WL 632907, at *8–9 (Tex. App.—Fort Worth Feb. 16, 2017, no pet. h.).

In contrast to *E.W.N.,* the First court in *Blank* reached a different result. During the pendency of the mother's appeal of the trial court's order modifying a divorce decree and appointing the father as the children's managing conservator, the father filed a new suit to modify conservatorship. *Blank*, 2015 WL 4747022, at *1. The First court dismissed her appeal as moot when she failed to appeal the default order issued by the trial court on the father's new petition and instead filed her own new petition to modify conservatorship. *Id.* at *1–2. The court reasoned that because the family code treats modification proceedings as separate lawsuits, a trial court in a new lawsuit would not lose jurisdiction due to an appeal being taken from a final order in a previous lawsuit. *Id.* at *2.

13

Likewise, in *Hudson*, which involved a motion to modify child support payments filed while the underlying paternity suit was pending on appeal, the Fifth court also concluded that the motion could be heard and ruled on while the prior final order was on appeal.[2]  931 S.W.2d at 337–38.  The Fifth court reversed the trial court's dismissal order, relying in a perfunctory manner upon the "continuing, exclusive jurisdiction" language of former section 11.05, now section 155.001(a),[3] to hold that the trial court retained jurisdiction to modify the order establishing paternity notwithstanding the pending appeal, stating,

> Once the trial court decided the paternity and support of the child, it acquired continuing jurisdiction over the parent-child relationship.  It retained continuing, exclusive jurisdiction to hear a new proceeding affecting that relationship.
>
> That Hudson filed his motion to modify during the pendency of his appeal from the order he seeks to modify does not alter the trial court's jurisdiction.  Because the family code vests the trial court with continuing, exclusive jurisdiction to hear Hudson's motion to modify child support, the trial court erred in dismissing his motion.

*Id.* at 337–38.

---

[2]In *Hudson*, the trial court relied on section 11.11(e), which was in effect before the family code recodification in 1995, to conclude that it had no jurisdiction over the motion to modify because it had lost authority to issue temporary orders and its plenary power had expired.  931 S.W.2d at 337–38. The provisions formerly found in section 11.11(e) can now be found in family code section 109.001.  *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 136–37 (current version at Tex. Fam. Code Ann. § 109.001).

[3]*See* Act of May 24, 1973, 64th Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1412, 1414, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, §§ 1–2, 1995 Tex. Gen. Laws 113, 168–69, 282 (current version at Tex. Fam. Code Ann. § 155.001).

We think that Subsections A and B, read together, reveal a statutory scheme whereby during the pendency of an appeal, a party may seek temporary relief from a SAPCR order—including the suspension of the order itself—as long as the modification sought is necessary to "preserve and protect the safety and welfare of the child" during the appellate process. At the same time, a party may also seek to *permanently* modify that SAPCR order in a new suit, provided the petitioner can show sufficient statutory grounds to establish his or her right to do so. These statutes, including section 109.001, can be read in harmony without rendering any parts meaningless or superfluous. Because the statutes serve independent purposes—one type of modification providing temporary relief, the other type making permanent change—a simultaneous request for both would present neither conflict nor redundancy. Rather than meaningless or superfluous, section 109.001 is merely one component in an overall statutory scheme designed to provide avenues of relief at multiple levels and in fluid circumstances, one part of an integrated approach to address the unique circumstances that arise in the ever-changing environment of family life. We overrule this portion of Father's complaint.

### 3. Mootness

Father argues that subsections (a) and (c) of section 109.002 combine to deprive the trial court of authority to modify a SAPCR during the pendency of an appeal. Those subsections provide for appeal from a final order "as in civil cases generally" under the rules of appellate procedure and provide that the order is not

15

suspended unless either the trial court does so, or the appellate court, on a proper showing, permits it to be suspended. Tex. Fam. Code Ann. § 109.002(a), (c). During oral argument, Father also argued that allowing modification orders to moot prior final orders would create an opportunity for a litigant or a trial judge to use continuous and sequential modifications to effectively elude appellate review of the orders that govern the parties.

### a. The subsections do not conflict

First, there is a difference between suspending an order and mooting an order, and neither party argues that modification of a SAPCR order would *suspend* the original order. Suspension of an order implies a lack of certainty as to its duration. In essence, suspension places an order in stasis, a suspended state of temporary, perhaps unknown, duration, and a status that might become permanent, depending upon future circumstances.

The modification of a SAPCR order, however, does not put the prior order into any kind of suspended status. When a SAPCR is modified, the new order does not suspend the prior order, it replaces it. The new order renders the prior order ineffective—moot. The question before us, then, is whether the law will permit a SAPCR order to be mooted while it is being considered on appeal.

With regard to mootness, the law generally provides that, despite the existence of a justiciable controversy between the parties at the time the dispute arose or the appeal was taken, changed circumstances may moot a complaint. *Matthews v. Kountze ISD*, 484 S.W.3d 416, 418 (Tex. 2016). Thus, for any

16

number of reasons, a complaint regarding a final judgment—whether arising under the family code or any other civil law provision—can become moot prior to resolution of the matter on appeal. *See*, *e.g.*, *Emps. Fin. Co. v. Lathram*, 369 S.W.2d 927, 930 (Tex. 1963) (mooted by voluntary payment); *JJW, L.L.C. v. Aguirre*, No. 08-16-00051-CV, 2016 WL 3632809, at *1 (Tex. App.—El Paso July 6, 2016, no pet.) (mem. op.) (mooted by grant of new trial); *Robinson v. Alief ISD,* 298 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (mooted by defendant's expunction of complained-of material in plaintiff's personnel file); *Murphy v. Murphy,* 21 S.W.3d 797, 798 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (mooted by party's death); *Fowler v. Bryan ISD,* No. 01-97-01001-CV, 1998 WL 350488, at *6–7 (Tex. App.—Houston [1st Dist.] July 2, 1998, no pet.) (not designated for publication) (mooted by defendant's adoption of policies and training sought by plaintiff).

Father articulates nothing peculiar to SAPCR orders or the law that governs them that would require us to carve out an exception to the general rule that changed circumstances may moot an appellate issue or an entire appeal. Nor can we find any compelling authority to so hold.

We reject the notion that the interplay between subsections (a) and (c) compel such a result. Assuming a litigant is successful in showing grounds for a modification in a new petition while the appeal is pending, thus gaining permanent relief, that prior final order—as well as any temporary relief, including

17

a suspension order, granted while the prior final order was pending review on appeal—may be mooted.

### b. Capable of evading review

During oral argument, Father expressed concern that allowing modification orders to occur during the appellate process would allow a party or a trial court to evade judicial review in perpetuity through a process of continuous, successive modifications.

The First court considered this issue in *Blank*. *See* 2015 WL 4747022, at *1, *3. In that case, after our sister court notified the parties of its concern that it lacked jurisdiction over the appeal because the order complained of might have been mooted by a subsequent modification order, the appellant included in her response the argument that even if her appeal would otherwise be mooted by the subsequent modification order, her appeal would fall within the "capable of repetition, yet evading review" exception to the mootness doctrine.[4] *Id.* She reasoned that because her complaints—loss of parental rights and the amount of child support imposed—applied to the subsequent modification order as well as the first modification order, the trial court's rulings could be repeated through successive modification orders that would escape appellate review. *Id.* at *2–3.

_____

[4]As set out above, the appellant in *Blank* also argued that her appeal of the first modification order "'divested'" the trial court of its jurisdiction to consider and grant the second modification; thus, she posited, the appellate court, not the trial court, had jurisdiction over the legal proceedings. 2015 WL 4747022, at *2. In the alternative, she also argued that because the injury she complained of on appeal was a continuing one, her appeal was not moot. *Id.*

18

Our sister court disagreed, rejecting the appellant's contention because to fall within the "capable-of-repetition, yet-evading-review" exception to the mootness doctrine, a party must prove that "the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot." *Id.* at *3. The appellant's complaints as to custody were not "of such short duration that judicial review is precluded," the court reasoned, because the "'stringent requirements'" imposed by the family code upon a party to obtain modification of a SAPCR order would deter short-term modification. *Id.* (quoting *Ngo v. Ngo*, 133 S.W.3d 688, 691 (Tex. App.—Corpus Christi 2003, no pet.)). Specifically, in *Ngo*, the court pointed to the statutory requirement that a party demonstrate such a material and substantial change of situation that modification of the order would be in the child's best interest as a statutory barrier to a party's ability to obtain frequent or short-lived modifications of these orders. 133 S.W.3d at 691.

Moreover, as the First court pointed out, for a particular case to fall within this mootness doctrine exception, a party must also demonstrate a "reasonable expectation that the same action will occur again if the issue is not considered." *Blank*, 2015 WL 4747022, at *3 (citing *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999)). This, the First court noted, cannot be shown if the courts have already addressed that issue on the merits. *Id.* And, observing that numerous Texas appellate courts have addressed complaints as to modifications of conservatorship, the First court held that the appellant's complaints in *Blank* were

19

capable of being reviewed. *Id.* (citing *Lenz v. Lenz,* 79 S.W.3d 10, 21 (Tex. 2002)).

In so holding, the First court in *Blank* rejected the *ipso facto* notion that just because a subsequent modification order might divest an appellate court of jurisdiction over the appeal of the original SAPCR order, the complaint on appeal would be capable of repetition, yet would evade review. Ultimately, because the appellant failed to satisfactorily demonstrate that, under the circumstances of that case, she "could not obtain review of the *new* order," the First court dismissed the appeal as moot. *Id.* (emphasis added).

While we recognize that evading review as posited by Father could occur in theory, we agree with Mother that the statutory scheme, the rules that govern modification of SAPCR orders, and the law in general contain sufficient safeguards to ensure the unlikelihood and undesirability of such an endeavor. *See* Tex. Fam. Code Ann. §§ 156.101–.105, .401, .403–.405 (setting out limited circumstances and specific grounds that must be proven to permit modification of a SAPCR order); *see generally* Tex. R. App. P. 52.8(c), 52.10(a)–(b); *Walker v. Packer*, 827 S.W.2d, 833, 839 (Tex. 1992) (orig. proceeding) (holding that mandamus will issue to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law). We also agree with the First court's reasoning in *Blank* in determining that the circumstances here do not present a situation wherein Father has effectively been denied appellate review. *See* 2015 WL 4747022, at *3.

20

### 4. Practical consequences

During argument, Father also pointed to an important practical consequence of permitting a party to petition for modification of a SAPCR order in the trial court at the same time he seeks review of the same order on appeal— increased litigation costs.

In *E.W.N.*, in reaching its jurisdictional conclusion, the Eighth court considered the broader policy issues and circumstances unique to cases governed by the family code. 482 S.W.3d at 154–56. The court acknowledged that its holding that the trial court lacked jurisdiction to consider subsequently filed motions to modify while the prior order was pending on appeal presented a "quandary" to litigants "when circumstances change while an appeal is pending." *Id.* at 154. In a thoughtful and reasoned manner, the court attempted to strike a balance between the "tension" existing in circumstances presenting "a clear and compelling reason why the existing order should be changed despite the pendency of the appeal" and the public policy against litigation "becoming a revolving door to the courthouse." *Id.* at 154–57. After undertaking an examination of the remedies available to litigants facing this dilemma, the court ultimately concluded that the remedy lies within the appellate court's power to suspend problematic orders and to abate an appeal for an emergency hearing in the trial court to protect the child. *Id.* at 156–57. The court further suggested that "innovative minds" could devise additional remedies not specifically addressed by its holding. *Id.* at 157.

21

We see no need to invent additional creative solutions to this problem. A party need only draw upon remedies already provided for by law. So while we share Father's concerns about increased litigation costs—as well as the potential for wasting judicial resources—if a party should try to "game the system," we agree with Mother that the law provides adequate remedies for those who must face litigation costs in defense of groundless or frivolous claims. *See* Tex. Fam. Code Ann. §§ 156.005, 106.001–.002; Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001, .004 (West 2002); Tex. R. Civ. P. 13. If, on the other hand, claims are not groundless or frivolous, a party should not be barred from asserting them simply because additional resources must be expended to litigate them.

In sum, we see no compelling reason, whether based on law or broader policy considerations, why a trial court should lose jurisdiction of a lawsuit due to an appeal being taken in a separate, albeit closely-related, lawsuit. That the appeal could subsequently become moot by virtue of the trial court's ruling on the modification matter does not change that analysis. Therefore, we agree with our sister courts in *Hudson* and *Blank* that in these circumstances a trial court has continuing, exclusive jurisdiction over a petition for modification pending appellate review of a prior final SAPCR order. We hold that the trial court has jurisdiction to hear Mother's counter-petition to modify while the appeal of the July 26, 2016 order is pending.

## IV. Conclusion

Accordingly, we deny Father's petition for writ of prohibition and lift our stay order issued on December 6, 2016.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DELIVERED:  March 23, 2017